Case4:11-cv-01414-LB   Document1   Filed03/24/11   Page1 of 10

William M. Simpich, Esq., SB#106672
Law Offices of William M. Simpich
1736 Franklin Street, 10th Floor
Oakland, CA 94612
Telephone (510) 444-0226
Facsimile (510) 444-1704

Attorney for Plaintiffs

FILED
MAR 24 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

E-filing

| | |
|---|---|
| Brett Anderson and Michelle Harris, individually and on behalf of their children Prince Jaiden Anderson and Princess Jai'me Anderson, <br><br> Plaintiffs, <br><br> v. <br><br> Monique Lomas, deputy sheriff, Al Vernon, deputy sheriff, Robin Smith, employee of the Sonoma County Human Services Department, Sherry Hawkins, employee of the Sonoma County Human Services Department  County of Sonoma, Ventura County Child Protective Services, Dr. Sandra Stein, Brandon Shuman, Nicole Gustely, and Does I-XXX, <br><br> Defendants | Case No.: **C11-01414 LB** <br><br> **COMPLAINT** <br> **JURY DEMAND** |

Comes now the plaintiffs, who complain of the defendants and allege as follows:

**INTRODUCTORY ALLEGATIONS**

1. Plaintiffs are unaware of the capacities and identities of those defendants named herein as DOES I through XXX inclusive, and will seek leave of court to amend this complaint when same are ascertained.  Plaintiffs bring this action pursuant to federal jurisdiction, based on violations of the federal Constitution with pendent state claims.  The plaintiffs are Brett

Anderson and Michelle Harris, and also bring this action as guardians ad litem on behalf of their children Prince Jaiden Anderson and Princess Jai'me Anderson.

2. During at least part of the period of time that is the basis of this action, Plaintiffs resided at the premises of 6980 Eagle Ridge, Penngrove, California, owned by Defendant Sandra Stein. This residence is collectively referred to as the subject premises.

3. On February 19-20, 2010, the above-named city officials and agencies and private individuals initiated action that resulted in the plaintiffs losing their home for spurious reasons, and action that resulted in the children being separated from their parents for a period of months.

  A. Monique Lomas and Al Vernon are Sonoma County sheriffs, sued in their individual and official capacities;

  B. Robin Smith, a Sonoma County social worker, and her supervisor Sherry Hawkins, as well as their employer, the Sonoma County Human Services Department;

  C. Ventura County Child Protective Services, as well as the caseworker whose name is unknown at this time;

  D. Dr. Sandra Stein, Brandon Shuman, Nicole Gustely, and Does I-XXX,

4. Plaintiffs contend that each of the acts committed below were nondiscretionary, ministerial acts. The true reason was the intent of these defendants and Does I-V, to engage in concerted action to aid the economic interests of Sandra Stein and to retaliate against the plaintiffs for exercise of their legal rights.

5. Since that time to the present, these defendants engaged in numerous other activities designed to prevent these individuals from regaining access to their home, for criminal charges to be pressed against these individuals, and to prevent the return of the children involved to their parents for a period of months.

6. Other factors of this conduct by certain of these defendants is retaliation due to legal actions and other acts taken by the plaintiffs exercising legal rights to protect their property, their children, and themselves.

7. All of the defendants planned to retaliate against the plaintiffs for exercise of their legal rights by deciding to remove them from possession without providing adequate notice enabling all parties to vacate the premises in a timely fashion. With the use of threats, intimidation and coercion, they ordered everyone out of these buildings with virtually no notice and made them homeless in February 2010. This was done in a coercive manner, detaining and arresting the parties and taking the children into custody and taking action designed to prevent their return to their parents. Plaintiffs Brett Anderson and Michelle Harris were arrested and ordered to appear in court. When Dr. Ghost appeared in court, the charges were dismissed.

8. As part of this plan to make it impossible for the Plaintiffs to return to the premises, and to break apart their family unit, Sandra Stein called the sheriff's department that Brett Anderson was on the property, and was engaged in stealing plants and trespassing on the property. Officer Monique Lomas arrived on the scene and was informed by the plaintiffs that they had been locked out of their home and their belongings had been removed because of an argument with Sandra Stein around the marijuana cooperative that they jointly participated in. Instead of halting the criminal actions of Sandra Stein, Officer Lomas ordered the arrest of the plaintiffs for child endangerment and vandalism without probable cause. Plaintiffs were forced to leave their home and their property without probable cause, were detained and arrested without probable cause, and lost their children for a period of months due to the actions of these defendants. All the named parties have participated in concerted activity to ensure that the above-described actions occurred.

## UNDERLYING FACTS

9. On January 27, 2010, Michelle Harris placed an ad stating that her family was looking for property to rent with acreage in order to grow marijuana on a legal basis due to the medical needs.

10. On the same day, Dr. Sandra Stein responded to the ad. On February 2, 2010, Anderson, Harris, Gustely, and Shuman met with Dr. Sandra Stein and agreed to set up a medical

marijuana cooperative at the subject premises. Dr. Stein agreed to accept moving the 900 plants from Anderson and Harris' initial "marijuana grow" and the transfer of utilities to Brett Anderson's name in lieu of cash move-in rent and deposit. Anderson agreed that in lieu of cash rent he would transfer the electricity and pay the bill.

11. On February 8, Brett Anderson and Michelle Harris moved the plants, equipment, and their personal possessions from Napa to the subject premises. They also assisted Shuman and Gustely in moving their personal possessions to the subject premises.

12. On Feb. 10. 2010, Dr. Stein engaged in improper sexual advances and improper touching on Michelle Harris during a therapy session, constituting battery. Michelle Harris immediately halted the session and ended her treatment with Dr. Stein.

13. On Feb. 13, 2010, Dr. Stein asked Brett Anderson to "tell Brandon that I got that bank deposit." When asked about the details of that deposit, plaintiff Dr. Stein said that she had sent "10 pounds of her marijuana and three pounds of her friend Joyce's to Colorado and that Gustely had deposited some of the money in her account so that she could pay some bills and get supplies to start the grow." Plaintiffs explained that Dr. Stein, Shuman and Gustely were in violation of federal and state law and that plaintiffs felt they had a duty to report this to law enforcement. Dr. Stein cursed at plaintiffs and demanded that the plaintiffs move out.

14. On February 15, upon Gustely's return, Plaintiffs repeated to Stein, Gustely and Shuman their perceived duty to attempt to halt any crimes and report any committed crimes to law enforcement. Shuman and Gustely attempted to recruit the plaintiffs into their scheme to smuggle marijuana into Colorado, assuring them that they were seasoned traffickers.

15. On February 16, Plaintiffs informed Stein, Gustely and Shuman that they had met with an investigator of the Sonoma County district attorney's office and that they had left messages with the Sonoma County Narcotics Task Force and the Sonoma County FBI office.

16. On February 17, Gustely pushed Michelle Harris against the wall in the kitchen and held a taser close to her face, threatening "you better get your man under control:".

1  On the same day, Stein and Gustely attacked Brett Anderson as he was entering his house, hitting
2  and spitting on him.
3      17. On February 19, Dr. Stein confronted Michelle Harris, after illegally entering their
4  home without notice. Dr. Stein asked about more therapy sessions, which led to an argument.
5  Dr. Stein grabbed Michelle Harris so that she couldn't leave, and pleaded with her not to be angry
6  about the previous non-consensual touching, saying that "it was just part of the therapy". Brett
7  Anderson entered and demanded that Dr. Stein release Michelle Harris. Dr. Stein then spit on
8  Brett Anderson and started pulling his hair. Brett Anderson called 911. Law enforcement
9  arrived and told everyone to stay away from each other.
10     18. Brett Anderson and Michelle Harris left the premises for the day, returned at 8 pm, and
11 saw Dr. Stein, Gustely and Shuman moving large boxes, grow equipment, and other objects into
12 the home. They then discovered that these same individuals had changed the locks and moved
13 their belongings and personal property out of the house and into a common courtyard. The
14 driveway was blocked by a red jeep. Michelle Harris tried to put the Plaintiffs' motor home in
15 reverse, but instead went forward and hit the jeep.
16     19. Later that evening, Dr. Stein, Gustely and Shuman provided false information to law
17 enforcement officers Monique Lomas and her supervising officer Al Vernon while the plaintiffs
18 provided true information. Michelle Harris asked Lomas if the landlord admitted placing our
19 property outside and locking us out. Officer Lomas stated that Dr. Sandra Stein admitted that
20 she, Gustely and Shuman had moved our property and were refusing to let us back in. Brett
21 Anderson informed Lomas that the landlord was acting illegally and was in violation of
22 California Penal Code Sections 418, 549 and 602 as well as CCP Section 1159, and asked her to
23 take action as Officer Lomas had personal knowledge of these crimes. Officer Lomas stated,
24 "What did you people think was gonna happen? Did you think these people were just going to
25 accept you up here?" and advised the Plaintiffs to leave the property now. Officer Lomas
26 refused to make any arrests or to assist in a citizen's arrest made by Brett Anderson. Officer
27
28                                          -5-

1  Lomas said, "this is the fifth call to this property today, and if she gets another call and has to
2  come out here again, somebody's going to jail."
3      20. After Officer Lomas left, Brett Anderson entered the subject premises with his family
4  without committing any act of vandalism. Dr. Stein snatched Prince Jaiden from Brett
5  Anderson's arms and shook him, cursing his father all the while. Brett Anderson again called
6  911. When Brett Anderson asked for Dr. Stein to be arrested for the assault on his child, Officer
7  Lomas instead had Brett Anderson placed in handcuffs on the spot for entering the subject
8  premises. Brett Anderson remained handcuffed for four hours for no good cause. Officer Lomas
9  proceeded to provide all of the evidence in the possession of the plaintiffs (contracts, copies of
10 checks, inventory records, hotel receipts, withdrawal slips, and doctor recommendations) and
11 handed them to Dr. Stein, Brandon Shuman and Nicole Gustely.
12     21. While conferring with Stein, Shuman, and Gustely, Anderson overheard Lomas
13 stated that she would "love to take him in but we have nothing to charge him with". Dr. Stein
14 then responded, "What about child endangerment? I was on the phone with CPS when you
15 arrived."
16     22. Officer Lomas reported that the plaintiffs had a motor home outside, with additional
17 living quarters in the house which was "dirty and cluttered", had "an odor of marijuana" and that
18 there was a marijuana grow in the adjoining garage. She wrote in her report that "based on my
19 observations of the living conditions and the marijuana plants in the house, I was concerned for
20 the safety and welfare of the children.", and proceeded to contact Child Protective Services to
21 take the children into custody. The claimed basis for the "protective custody" was because the
22 subject premises was "found to be unsafe with health and safety hazards, including, but not
23 limited to, marijuana growing, grow venting, industrial equipment for the marijuana within reach
24 of the children, lack of food in the home, and home being (sic) disarray." Without probable
25 cause under any reasonable interpretation of the evidence, Lomas and Vernon proceeded to arrest
26 the plaintiffs for willful child endangerment and vandalism. No charges were ever filed against

1  the Plaintiffs by the District Attorney.

2  23. On Feb. 21, 2010, Dr. Stein, Shuman and Gustely filed a false police report stating that Anderson threatened to kill everyone in the house, broke into the garage, and stole personal property. On Feb. 22, 2010, these same three individuals totaled the Plaintiffs' motor home, resulting in damages estimated of $6700.

3  24. On March 3, 2010, Plaintiffs had served Dr. Stein, Gustely and Shuman served the Plaintiffs with a TRO. who then physically attacked the process server Kristy Pettit and then later the plaintiffs. The plaintiffs called 911, and Dr. Stein, Gustely and Shuman were arrested by the Sonoma County Narcotics Task Force based on nine felony counts for each one of them. On March 5, 2010, the plaintiffs were again attacked by Dr. Stein, Gustely and Shuman, in violation of the restraining order.

4  25. On March 5, 2010, the plaintiffs returned to the premises in an effort to obtain some of their belongings. Sandra Stein physically attacked Brett and Michelle, while Nicole Gustely drove her jeep into Brett and hit him on the rear right hand side of their body.

5  26. Meanwhile, the Plaintiffs' children were taken into custody with no good cause by Robin Smith of Sonoma County Health Protective Services, and were not released due to the actions of Robin Smith, supervisor Sherry Hawkins, Sonoma County Health Protective Services, and a false report by Ventura County Child Protective Services, stating, among other false statements, that Michelle Harris had "multiple substance issues as well as mental health issues which render unable to work or care for children properly". It took several months for the children to be released from protective custody, due to the actions of all of these defendants. The Plaintiffs demand a jury in this action.

### FIRST CAUSE OF ACTION
**(False arrest and imprisonment - All Defendants)**

27. Plaintiffs incorporate by reference all of the aforementioned contentions.

28. Due to the events as stated above, Plaintiffs were wrongfully evicted from their

-7-

1 home, possessions and evidence were stolen, taken into custody, Brett Anderson was handcuffed
2 without cause, and their children taken into "protective custody", improper investigation of the
3 basis for the childrens' detention, and continued cover-up to disguise the wrongful nature of the
4 original detention and continued investigation, violating 42 USC 1983 pursuant to the 4th
5 Amendment of the Constitution. All of the defendants named in this cause of action participated
6 in this misconduct while working in the same course of conduct with governmental officials. All
7 applicable state tort claims have been filed, and state claims based on the US Constitution and
8 California Constitution and law are alleged here and in each subsequent cause of action. Punitive
9 damages are sought against all defendants for the outrageous acts set forth above and in each
10 subsequent cause of action.

## SECOND CAUSE OF ACTION

### (Retaliation - Defendants Lomas, Vernon, County of Sonoma, Stein, Gustely, Shuman)

29. Plaintiffs incorporate by reference all of the aforementioned contentions.

30. Due to the events as stated above, Plaintiffs were wrongfully evicted from their home, possessions and evidence were stolen, taken into custody and their children taken into "protective custody" in retaliation for the Plaintiffs exercising their right to free speech and redress of grievances in violation of 42 USC 1983 pursuant to the First Amendment of the US Constitution, including but not limited to the acts of informing law enforcement of the illegal actions of Stein, Gustely and Shuman, the requests to arrest said defendants, the request to be restored to possession of the subject premises, and the request to assist with a citizen's arrest. All of the defendants named in this cause of action participated in this misconduct while working in the same course of conduct with governmental officials. All applicable state tort claims have been filed based on Article 1, Section 3 California Constitution are alleged as well.

## THIRD CAUSE OF ACTION

### (Battery - Officer Lomas, Stein, Gustely, Shuman)

-8-

31. Plaintiffs incorporate by reference all of the aforementioned contentions.

32. Due to the events as stated above, Plaintiffs were repeatedly battered by Stein, Gustely and Shuman for no good cause. Plaintiff Harris was especially abused by Dr. Stein. Plaintiff Anderson was improperly handcuffed.

## FOURTH CAUSE OF ACTION

### (Negligence - All Defendants)

33. Plaintiffs incorporate by reference all of the aforementioned contentions.

34. Due to the events as stated above, Plaintiffs were taken into custody, Brett Anderson was handcuffed without cause, and their children taken into "protective custody", improper investigation of the basis for the childrens' detention, and continued cover-up to disguise the wrongful nature of the original detention and continued investigation. Punitive damages are also sought due to the gross negligence of the parties.

## FIFTH CAUSE OF ACTION

### (Wrongful eviction - Lomas, Vernon, County of Sonoma, Stein, Gustely, Shuman)

35. Plaintiffs incorporate by reference all of the aforementioned contentions.

36. Due to the events as stated above, Plaintiffs were wrongfully evicted from their home by Dr. Sandra Stein. The above-named defendants aided and abetted Dr. Stein in conducting this wrongful eviction.

## SIXTH CAUSE OF ACTION

### (Civil Code Section 52.1 - Lomas, Vernon, County of Sonoma, Stein, Gustely, Shuman)

37. Plaintiffs incorporate by reference all of the aforementioned contentions.

38. Due to the events as stated above, Plaintiffs' rights were violated by each of the above-named Defendants, due to actions of threat, intimidation and coercion.

WHEREFORE, Plaintiffs pray for relief as follows:

1. For general damages against all defendants, jointly and severally, in an amount according to proof;

2. For special damages against all defendants, jointly and severally, in an amount according to proof;

3. For punitive/exemplary damages against the defendants, jointly and severally, in an amount according to proof

4. Attorney's fees, pursuant to 42 USC 1988, Civil Code Section 52.1, the private attorney general doctrine and other applicable theories that protect the public interest;

5. For costs of suit;

6. For such other relief that the Court considers just and proper.

Dated:   March 23, 2011

WILLIAM M. SIMPICH
Attorney for Plaintiffs